OPINION
{¶ 1} Defendant-appellant Michael Lellock appeals from his conviction and sentence, following a guilty plea, to one count of Attempted Unlawful Sexual Conduct with a Minor, a felony of the fourth degree, and one count of Importuning, a felony of the fifth degree. Lellock contends that the trial court abused its discretion when it denied his motion to withdraw his guilty plea, made on the day originally scheduled for sentencing, but before a sentence had been imposed.
 {¶ 2} The trial court conducted an evidentiary hearing on Lellock's motion to withdraw his plea. Based upon our review of the record, we conclude that the trial court did not abuse its discretion when it denied the motion. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} Lellock is an adult with a Bachelor of Science degree in Aeronautical Engineering, a Master's degree in Management Systems, and forty years' experience in the field of aerospace engineering. He was accused of soliciting, over the internet, vaginal and oral sex from a law enforcement officer posing as a fifteen year old girl. He was charged by indictment on one count of Attempted Unlawful Sexual Conduct with a Minor, where the offender is ten or more years older than the victim, a felony of the fourth degree under R.C. 2907.04 and 2923.02(A). He was also charged by indictment on one count of Importuning, a felony of the fifth degree under R.C. 2907.07(D)(2).
 {¶ 4} On August 17, 2005, Lellock appeared in open court with his attorney and tendered a plea of guilty to both counts of the indictment. For its part, the State agreed that it would not oppose the imposition of community control sanctions as a sentence, and would recommend that Lellock be classified as a sexually oriented offender, as opposed to a more severe classification. The trial court, after an appropriate plea colloquy, accepted Lellock's guilty plea, and referred the matter to its adult probation department for a pre-sentence investigation. The trial court made it clear that the State's recommendation as to the appropriate sentence or sexual offender classification would not be binding upon it. A disposition hearing was scheduled for September 27, 2005.
 {¶ 5} On September 27, 2005, the day set for the disposition, Lellock filed a motion to withdraw his plea. A hearing on Lellock's motion was scheduled for October 18, 2005. At that hearing, Lellock called Linette Shaver, of the adult probation department, and himself to testify, and his attorney gave a statement under oath and was cross-examined. The trial court took the matter under advisement.
 {¶ 6} On November 14, 2005, the trial court denied Lellock's motion to withdraw his plea, orally, from the bench, and proceeded to a disposition hearing. Following that hearing, Lellock was sentenced to six months on each count, to be served concurrently, and he was classified as a sexually oriented offender. From his conviction and sentence, Lellock appeals.
 II {¶ 7} Lellock's sole assignment of error is as follows:
 {¶ 8} "THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION BY DENYING APPELLANT'S PETITION TO VACATE THE GUILTY PLEAS."
 {¶ 9} A pre-sentence motion to withdraw a guilty plea is to be freely and liberally granted, but the defendant has no absolute right to withdraw his plea, which is confided to the discretion of the trial court. State v. Xie (1992),62 Ohio St.3d 521, at 527.
 {¶ 10} Every motion to withdraw a guilty plea necessarily includes a "change of heart," but it is clear that a mere change of heart, without some additional justification, is not a sufficient ground for the withdrawal of a guilty plea, especially where the defendant has become aware that the sentence is likely to be greater than was anticipated at the time of the plea.State v. Lambros (1988), 44 Ohio App.3d 102.
 {¶ 11} In the case before us, Lellock contends that more than a mere change of heart is involved because: (1) his plea was in the nature of a plea pursuant to North Carolina v. Alford
(1970), 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162; and (2) he did not understand the terms used in the colloquy, so he did not understand what he was doing. An Alford plea is a guilty plea accompanied by a protestation of innocence. Although Lellock presented evidence at the hearing on his motion to withdraw to the effect that he protested his innocence in private communications with his attorney before, during, and immediately after, the plea hearing, there is nothing in the record to reflect that any protestation of innocence was brought to the attention of the trial court, which would have required the trial court to inquire concerning whether Lellock's intention to plead guilty was knowing and intelligent, in view of his belief that he was innocent. State v. Bowling (March 10, 1987), Montgomery App. No. 9925.
 {¶ 12} There is nothing in the record to suggest that Lellock became aware of any difficulties in the State's proof, or of the existence of exculpatory, or potentially exculpatory evidence, after he pled guilty. If his testimony is accepted, he believed himself innocent of the charges against him before he pled guilty, at the time he pled guilty, and after he pled guilty. Nothing happened to change the situation in this regard; he merely experienced a change of heart.
 {¶ 13} Lellock's testimony that he did not understand the significance of the language used in the colloquy was rejected by the trial court as not credible, and we find no error in this regard. Lellock was reduced to claiming that he did not understand what the term "guilty" meant. Although Lellock testified, at the hearing on his motion to withdraw his plea, that he was responding to pressure when he tendered his plea, it became clear that the pressure to which he was responding was the pressure necessarily and inevitably present when one is indicted on felony charges with incarceration in prison as a possibility:
 {¶ 14} "Q. Okay. Now, Mike, the question I think that we would need to ask, given the fact that you have the education that you have, that you read the plea form prior to coming in here, and given your testimony here today that you maintained with your counsel and basically anybody that would listen to you that you're not guilty of these crimes from day one, why then did you come into the Courtroom in front of Judge Campbell and enter a plea of guilty to these charges?
 {¶ 15} "A. Partially because of legal advice, legal expediency, to make it expeditious; quickly so my career would not be terminated, my current employment. At my current employment I feared lots of negative things and did not have a good clear understanding, and I had to go with whatever competent people told me to be an appropriate way to handle the case.
 {¶ 16} "* * *
 {¶ 17} "Q. Okay. So not only was it in writing, paragraph 17, but it was asked of you of the Court. Now, you didn't understand what the Judge meant when he said he can't accept your guilty plea unless you feel that you did the offense?
 {¶ 18} "A. The pressure of the situation and the fact that there are many questions and any one of them could eliminate the potential for probation, I felt under a lot of pressure to answer a lot of questions a little bit less than what I would have directly felt.
 {¶ 19} "* * *
 {¶ 20} "Q. And, in fact, you actually came in this Court and, under oath, when the Judge asked you has anyone from the Court or the Prosecutor's office or the defense forced you in any way to come in here and plead guilty, do you remember him asking you that?
 {¶ 21} "A. I believe so.
 {¶ 22} "Q. And what did you answer to the Court on that?
 {¶ 23} "A. I answered it as I felt I had to.
 {¶ 24} "Q. So it was twice, you had two opportunities, not only on paragraph 14 but on paragraph 17 to put the brakes on this but you didn't, did you?
 {¶ 25} "A. That's correct, for fear of losing the case." (Emphasis added.)
 {¶ 26} As Lellock's last answer quoted above makes clear, the pressure that led him to plead guilty was the "fear of losing the case," which is doubtless responsible for the vast majority of decisions to plead guilty. Nothing in this record suggests that Lellock's decision to seek to withdraw his plea was anything more than a change of heart, most likely brought on by his realization that, as a result of the recommendation in the pre-sentence investigation report, he was not going to be sentenced to community control sanctions, but to incarceration in prison. We see no abuse of discretion in the trial court's decision to deny Lellock's motion to withdraw his plea.
 {¶ 27} Lellock's sole assignment of error is overruled.
 III {¶ 28} Lellock's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
Grady, P.J. and Donovan, J., concur.